IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SANDRA NAVARRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04CV380-SRW |
| ) | (WO) |
| CITY OF ANDALUSIA, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sandra Navarre sues defendants City of Andalusia, City of Andalusia Police Department, and Wilburn Williams (Chief of Police) in his individual and official capacities. Navarre brings six claims alleging: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) denial of equal protection pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (3) outrage; (4) negligent supervision; (5) invasion of privacy; and (6) retaliation in violation of Title VII.  This action is presently before the court on the motions for summary judgment filed by defendants (Docs. ## 19 and 20).  Upon consideration of the motion, the court concludes that: (1) defendants' first motion for summary judgment is due to be denied; (2) defendants' second motion for summary judgment is due to be granted in part and denied in part.

**THE SUMMARY JUDGMENT STANDARD**

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). For issues on which the non-movant bears the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the non-moving party's case." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence

or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

### FIRST MOTION FOR SUMMARY JUDGMENT

Defendants' "First Motion for Summary Judgment" (Doc. # 19) is based entirely on plaintiff's failure to respond to defendants' requests for admissions. Rule 36 of the Federal Rules of Civil Procedure provides, in pertinent part:

> (a) **Request for Admission**. A party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . . Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request . . . , the party to whom the request is directed serves upon the party requesting the admission a written

> answer or objection addressed to the matter . . . .
>
> (b) **Effect of Admission**.  Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

Fed. R. Civ. P. 36.  Facts established by operation of Rule 36 may support summary judgment in favor of the party requesting the admissions.  See Stubbs v. Commissioner of Internal Revenue Service, 797 F.2d 936 (11th Cir. 1986).  In their motion, defendants list fifty requests for admission, stating that they have "propounded the . . . Requests for Admission of Fact upon the Plaintiff."  (Doc. # 19, p. 4).  However, defendants have provided the court with no evidence from which it may conclude: (1) that defendants properly served plaintiff with requests for admission; (2) the date on which such requests were served; or (3) that more than 30 days passed after service with no response from plaintiff.[1]  Without such evidence, defendants have failed to prove that any matter has been established by operation of Rule 36.  Cf. Konica Minolta Photo Imaging, U.S.A., Inc. v. Sonman, Inc., 2005 WL 2219428, *5 (M.D. Fla. Sep. 13, 2005)(declining to find admissions established where affidavit filed in support of summary judgment by party requesting admission did not establish that the opposing party had failed to respond to the request for admissions).  Accordingly, defendants' first motion for summary judgment must be denied.

---

[1] In their motion, defendants do not even argue that they properly served plaintiff, the date of any such service, or that plaintiff failed to respond within 30 days after service of the requests. Instead, they argue only that they "propounded" the requests and that plaintiff failed to respond.

**SECOND MOTION FOR SUMMARY JUDGMENT**

As an initial matter, the court notes that defendants make no argument directed to plaintiff's state law claims. Thus, defendants have not demonstrated that they are entitled to summary judgment as to those claims.[2]

Defendants' brief in support of their second motion for summary judgment contains little legal analysis. Defendants have not attempted to demonstrate their entitlement to summary judgment by applying the framework established by the Supreme Court for evaluating claims of employment discrimination based on circumstantial evidence. Rather, defendants have quoted extensively from plaintiff's deposition testimony and made observations about that testimony. They have cited case law only with respect to: (1) the summary judgment standard (Doc. # 21. pp. 1-2); (2) the statutory and regulatory prohibitions on executing a query using the ACJIS system for unauthorized purposes (id., p. 7); and (3) the requirement that conduct be sufficiently "severe or pervasive" to support a hostile environment claim (id., pp. 17-18).

Under the correct standard for employment discrimination claims, the court concludes that defendants are attempting to argue that: (1) plaintiff was verbally reprimanded for a legitimate non-discriminatory reason and, therefore, cannot prevail on a claim of

---

[2] Defendants do reference these claims in passing and state that the "entire lawsuit is preposterous." (Doc. # 21). However, defendants do not offer any substantive argument regarding plaintiff's state law claims.

discriminatory discipline (Defendants' brief, pp. 3-8);[3] (2) plaintiff cannot establish a *prima facie* case of discrimination as to her training claim because she did not apply for training or for another job (id., pp. 8-10); (3) plaintiff's transfer to night shift was because of a legitimate, nondiscriminatory reason – her lack of seniority – and, thus, to the extent plaintiff's retaliation claim is based on this transfer it is due to be dismissed (id., pp. 11); (4) plaintiff cannot establish a hostile environment claim (or a retaliation claim arising from a hostile environment) because she cannot establish "severe or pervasive" conduct (id., pp. 11-12); (5) there is no basis for holding the defendant employer liable on plaintiff's hostile environment claim because plaintiff failed to report harassment in accordance with the employer's policy (id., pp. 13-16); and (6) plaintiff cannot prevail on a retaliatory termination claim because she was not terminated, but was transferred pursuant to her request (id., pp. 16-18).  These arguments will be addressed in turn.

    1. <u>Verbal reprimand was for a legitimate non-discriminatory reason</u>.  The court does not read the allegations of the complaint to include a claim that plaintiff was disciplined because of her gender.  Rather, her complaint appears to be that the *manner* in which she was disciplined by Chief Williams contributed to a hostile environment.  (<u>See</u> Complaint, ¶ 10; <u>see also</u> Plaintiff's depo., pp. 142-45)(Chief was "screaming," "getting in [her] face," and slamming his fist on the desk; plaintiff testified that "if this would have been appropriately

---

[3] Plaintiff apparently interpreted defendants' brief to challenge the *prima facie* case of discriminatory discipline.  The court discerns no such argument in defendants' brief .

approached in a professional manner, I wouldn't be talking to nobody today.").[4] A legitimate reason for the counseling session does not preclude a hostile environment claim based on the Chief's conduct during the session. Thus, defendants are not entitled to summary judgment on the basis of this argument.

    2. <u>Plaintiff cannot establish a *prima facie* case as to her training claim because she did not apply for training or for another position</u>. This argument is likewise without merit. Defendants support this contention by quoting plaintiff's deposition testimony that she did not submit a written application for the police officer position. (Doc. # 21, pp. 8-10)(citing Navarre depo., pp. 164-67). However, in the quoted excerpt, plaintiff testifies that she spoke with the Chief on "numerous occasions" regarding a police officer position; that he told her he was "working on it" and was going to send her to training, and that it would be in March, and then in May; and that when he had an opportunity to select someone to attend the school to become a police officer, he chose Jeff Daniels. (<u>Id</u>.). Defendants' argument that plaintiff

---

[4] In response to defendant's argument regarding the legitimate reason for the discipline, plaintiff contends that male officers engaged in similar conduct and were not disciplined or forced to transfer. (Plaintiff's response, Doc. # 25, pp. 6-7). However, there is no allegation in the complaint which can be reasonably read to include a claim for discriminatory discipline. Plaintiff cannot amend her complaint through her response to summary judgment. A liberal reading of plaintiff's complaint (which has not been amended) reveals that she brings the following federal employment discrimination claims: (1) that she was discriminatorily denied "training for other jobs" (Complaint, ¶ 9); (2) that she was subjected to a hostile work environment because of her gender (<u>id</u>., ¶ 10); and (3) that defendants retaliated against her for her complaint of harassment by (a) assigning her to the night shift; (b) by terminating her employment; and (c) by subjecting her to a hostile environment (<u>id</u>., ¶¶ 10, 11, 29). Plaintiff makes clear in her deposition testimony that the first of these claims pertains to defendants' failure to select plaintiff, on a single occasion, for training to become a police officer and, further, that her § 1983 claim is based solely on this event. (Navarre depo., pp. 164-66, 200-02).

failed to apply for the position might have merit if it were accompanied by evidence that applicants were required to submit a written job application for the position. However, defendants filed no such evidence. Accordingly, they are not entitled to summary judgment on plaintiff's claim that defendants discriminated against her by failing to select her to attend the training to become a police officer.

      3. <u>Plaintiff's transfer to night shift was for a legitimate, non-discriminatory reason</u>. Plaintiff admits in her deposition that she was transferred to the night ("graveyard") shift because another employee who worked that shift was terminated, that shifts were assigned on the basis of seniority, and that plaintiff had the least seniority. (Navarre depo., pp. 176-84).[5] There is no evidence of record that the reason for plaintiff's reassignment to night shift – lack of seniority – is pretextual. Thus, to the extent plaintiff's retaliation claim is based on her transfer to the night shift, it is due to be dismissed.

      4. <u>Plaintiff cannot establish conduct that is sufficiently "severe or pervasive" to support a hostile environment claim</u>. To prevail on her hostile environment claim, plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her gender; (4) the harassment affected a term, condition, or privilege of her employment; and (5) a basis for holding the employer liable.

---

[5] Although plaintiff testified that she should have been moved back to her day/evening "floater" position after another employee was hired for the night shift, she admits that the dispatchers instead went to twelve-hour shifts, no dispatcher junior to plaintiff was placed in a day/evening "floater" position, and no one junior to plaintiff was assigned to work days or evenings. (Navarre depo., pp. 176-84).

See Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501, 508 (11th Cir. 2000). To satisfy the fourth element, conduct must be objectively[6] "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)(quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is a physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

To demonstrate "severe or pervasive" conduct by defendants, plaintiff relies on the following incidents (see Plaintiff's brief, pp. 11-13):

a. Officer Mike Haden came into the dispatch office and told plaintiff and Susie Davis that Chief Williams had Judy McCord and Peggy Grimes in his office and that he had "jumped on their asses and . . . told them they could be replaced," and that he was "yelling and screaming at them" for not doing their jobs and for "Ms. Peggy not handling dispatch like she should." Haden was laughing about the incident. (Navarre depo., pp. 54-56, 88-89, 101).[7]

---

[6] Defendants do not appear to contend that plaintiff did not subjectively perceive the environment to be sufficiently severe or pervasive.

[7] Plaintiff states in her affidavit that she noticed that Chief Williams "did not like women and frequently yelled at the females who worked there, making them cry." Fed. R. Civ. P. 56(e) requires that the party opposing summary judgment "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Plaintiff's testimony that Williams "did not like

b. Plaintiff has seen Judy and Peggy leaving the Chief's office "upset" occasionally and observed that they would "go to the restroom and wipe their face." (Navarre depo., pp. 68-70, 83-84).

c. On one occasion, Judy had tears in her eyes and was going to the restroom. She told plaintiff that "chief would yell a lot at her and get her upset." (Navarre depo., pp. 102-03).

d. Sergeant David Connor, plaintiff's co-worker, told plaintiff that "he needs a girlfriend and [plaintiff needs] a boyfriend." He showed up in the middle of the night and asked plaintiff to call an officer in to watch the radio so that plaintiff and Connor could go watch the sun rise. When another employee, Grady, brought plaintiff and Susie some coffee, Connor said, "What's he trying to get some too." (Navarre depo., pp. 98-100).[8]

e. The Andalusia police department has only one female officer, a detective. (Navarre aff., ¶ 3). Plaintiff told Williams she wanted to go to the police academy, and he

---

women" is conclusory, as is her statement that he "frequently" yelled at females. The Eleventh Circuit has "'consistently held that conclusory allegations without specific supporting facts have no probative value.'" Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000)(quoting Evers v. General Motors Corp., 770 F.2d 984, 985 (11th Cir. 1985)); see also Miller v. Citizens Security Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997)("A conclusory statement in an affidavit, however, cannot create a genuine issue of material fact which precludes summary judgment."). The court has considered the specific facts it has gleaned from its own review of the record, but not plaintiff's conclusory statements.

[8] In her affidavit, plaintiff states, "I was *continually sexually harassed* by a male police officer named David Connor." (Navarre aff., ¶ 5)(emphasis added). This statement is also conclusory. Plaintiff further testifies in her affidavit (id.) and in her deposition that Peggy Grimes, plaintiff's supervisor, told Williams about Connor's conduct; however, this testimony is inadmissible hearsay.

told her that he was working on it; however, he selected a male to go to the training. (Id.; Navarre depo., pp. 164-67).

      f. Male police officers were sent to training schools "for detective work or diving." None of the dispatchers were sent to a school, including the one male dispatcher. (Navarre aff., ¶6; Navarre depo., pp. 170-73).

      g. In August 2002, plaintiff's ex-husband – who had been convicted of the second degree murder of plaintiff's father and was on parole – left a message on her answering machine that he was in town. Plaintiff heard the message while she was at home on lunch break. She was scared and told a co-worker, Officer Ray Dixon, about it when she returned to work. Dixon, who had covered for her over lunch and was sitting at plaintiff's desk operating the computer, suggested that they run plaintiff's ex-husband on the system to find out where he was. Plaintiff gave Dixon her ex-husband's name and tag number, and Dixon ran it in the system. (Navarre aff., ¶¶ 7, 10; Navarre depo., pp. 115-19).

      h. In October 2002, Chief Williams called plaintiff into his office and screamed at her for wrongfully using the system. He was "right in [her] face, screaming at [her] and banging his hands on the table." Plaintiff tried to explain what had happened. Williams told plaintiff that "most of the time domestic abuse is the woman's fault anyway, and that it was [plaintiff's] fault [she] was being harassed by [her] ex-husband." Plaintiff left the meeting sobbing, and an officer offered to drive her home. (Navarre aff., ¶¶ 11-12; Navarre depo., pp. 115-119).

      i. The dispatchers ran NCI checks for the police department chaplain, Reverend

Tucker, so that he could get information on homeless people before he helped them, and the chaplain would sit in dispatch with the dispatchers although "no one is supposed to be in dispatch but certified operators." Nothing was said to the chaplain about sitting in dispatch. (Navarre depo., pp. 125-26). The dispatchers also ran tags "on the linc" for police officers on the street – Joel Scott, Roger Cinder and Barney Tyree – when the officers would not pull the vehicle over. (Id., pp. 126-30). Male police officers would often "linc" plaintiff on the radio "to run the tag number of a pretty woman that they saw to find out her name." (Navarre aff., ¶ 9).

    j. Although only dispatchers are supposed to use the ACJIS system, officers who relieved the dispatchers during their breaks or lunch period had to be able to run the system and did so. (Navarre aff., ¶ 9).

    k. At some point after the incident regarding plaintiff's ex-husband, Williams sent out a memo which had to be signed and returned by employees regarding misuse of the ACJIS system and "linc." (Navarre depo., pp. 125-27).

    l. Male police officers have not been disciplined for misuse of the system. (Navarre aff., ¶ 9).

    m. After plaintiff made an internal complaint and filed an EEOC charge, officers would not speak to plaintiff unless they had to request their messages. Plaintiff had to beg officers to fill in for her so that she could take her lunch hour. "Several" or "[n]umerous" times, when plaintiff requested that an officer come to the radio room so that she could take a restroom break, the officer would not show up. Plaintiff called her supervisor, Peggy, at

home to report this.[9] Peggy told plaintiff to "go ten six" from the radio for a restroom break, which was appropriate policy and was allowable. (Navarre depo., pp. 159-63; Navarre aff., ¶ 13).

The court concludes that the instances of conduct identified by plaintiff are insufficient to demonstrate the existence of a genuine issue of material fact regarding whether the conduct alleged was objectively sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment. Some of the circumstances upon which plaintiff relies could *possibly* be the result of discrimination but have not been shown through the introduction of competent evidence to be so in fact. These include the following allegations: (1) there is but one female officer; (2) male police officers were sent to training schools, but dispatchers were not; (3) male officers were not disciplined for asking dispatchers to run tags or "pretty women" or for filling in for the dispatchers without the proper certification to use the ACJIS; and (4) Williams' failure to discipline the police chaplain for asking the dispatchers to run NCI checks on homeless people when he was rendering assistance to them or for sitting in dispatch without being a certified operator. Since the evidence of record does not support the conclusion that these instances of conduct were discriminatory, they could not reasonably be perceived as having more than a minimal impact on the terms and conditions of plaintiff's employment for purposes of plaintiff's hostile environment claim.

With regard to Williams' "screaming" at McCord and/or Grimes, the competent

---

[9] Plaintiff states that "Peggy told the chief." (Navarre aff., ¶ 13). However, again, this is inadmissible hearsay.

evidence of record demonstrates that these incidents were occasional. Additionally, plaintiff did not personally witness these instances but only heard about them. While such incidents may nevertheless contribute to a hostile environment, they have less impact on plaintiff's work environment than conduct personally observed or experienced by the plaintiff.

The statement made by Sergeant David Connor, plaintiff's co-worker, that he needed a girlfriend and that plaintiff needed a boyfriend, and his conduct in asking plaintiff to call an officer in to watch the radio so that she and Connor could go watch the sun rise, were inappropriate. Additionally, his query about whether "Grady" was also trying to "get some" was boorish and offensive. However, these statements clearly fall into the category of "mere offensive utterance[s]." Harris, *supra.*

Plaintiff complains that the officers stopped speaking to her unless they had to. She testified that when she arrived at the Andalusia police department, "it was all one big family," but that changed so that "[i]f they didn't have to, they wouldn't speak to you only to ask you we've got paperwork up here from their girlfriends or their wives calling because we weren't allowed to give messages over the linc anymore . . . ." (Navarre depo., pp. 161-63). However, "Title VII is not a federal 'civility code.'" Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)(quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S.Ct. 998, 1000-02 (1998)). The court declines to hold that a co-worker's choice not to socialize with another at work can form the basis for a Title VII hostile environment claim.

Plaintiff's allegation that she had to "beg" officers to fill in for her so that she could take a lunch break and that they failed to come into the dispatch office so that she could take

restroom breaks are related to her employment conditions.[10] However, plaintiff testified that she was permitted to take restroom breaks without an officer replacing her in dispatch by going "ten-six" on the radio. Additionally, plaintiff has not pointed to evidence that she was denied her lunch breaks, only that she had to "beg" officers to fill in for her. Thus, while this conduct had some impact on her work environment, it is not particularly "severe."

The most significant incident evidenced in the record is plaintiff's claim that defendant Williams was "in [plaintiff's] face," screaming loudly at plaintiff while slamming his fists on his desk. Plaintiff testified that Williams' gestures were threatening (Navarre depo., pp. 110-11, 141-42). The type of "counseling" allegedly endured by the plaintiff, if taken as true, does not have any place in a work setting and is grossly unprofessional. However, although Williams was allegedly loud, agitated, and "in [plaintiff's] face," there was no physical contact. Plaintiff testified that this incident occurred in Williams' office during working hours and that her supervisor, Peggy Grimes, was present. (Id., p. 142). Under these circumstances, the court concludes that the incident cannot reasonably be found to have been physically threatening.

---

[10] Plaintiff has taken contradictory positions on this particular point. On the one hand, she contends that officers should relieve her in the dispatch office and their failure to do so is evidence of a hostile environment. On the other hand, she suggests that the officers should be disciplined for filling in as dispatchers because only dispatchers are supposed to use the ACJIS system.. *Compare* Plaintiff's brief at p. 12 ¶ 8 ("After she complained, the environment became very hostile. People ignored her, and she couldn't get any of the officers to relieve her so that she could go on her breaks or to the bathroom.") with id., p. 11 ¶ 4 ("Also, the officers had to relieve the dispatchers to take [their] 15 minute breaks and at lunch. At that time, they had to be able to run the system, despite the fact that only the dispatchers are supposed to use the ACJIS system. The male officers are not disciplined for using the system as they see fit.").

Considering the totality of the circumstances, the court concludes that the competent evidence of record is insufficient to support a finding that the conduct at issue was sufficiently severe or pervasive to alter plaintiff's terms and conditions of employment. Accordingly, defendants are entitled to summary judgment on plaintiff's hostile environment claim.[11]

5. <u>There is no basis for holding the employer liable on plaintiff's hostile environment claim</u>. In view of its conclusion that plaintiff has not demonstrated the existence of a genuine issue of material fact as to her hostile environment claim, the court does not address this argument.

6. <u>Plaintiff cannot prevail on a retaliatory termination claim because she was not terminated, but was transferred pursuant to her request</u>. It is undisputed that plaintiff was not terminated from her employment with the Andalusia police department. (Navarre depo., pp. 203-04, 263-64; <u>see also</u> Navarre aff., ¶ 13 ("It finally got so bad, that I requested a job transfer as a meter reader. However, that job requires much moving around, and I had an on the job injury, and am now disabled and cannot work.")). It appears that plaintiff relies instead on a theory of "constructive transfer." (<u>Id</u>.; <u>see also</u> Navarre depo., pp. 198). The Eleventh Circuit has "yet to recognize the claim of 'constructive transfer' as an adverse employment action." <u>Akins v. Fulton County, Georgia</u>, 420 F.3d 1293, 1306 (11th Cir.

---

[11] This holding on plaintiff's hostile environment claim necessarily dictates the conclusion that plaintiff's retaliation claim – to the extent it relies on a hostile environment after her complaint of discrimination – must also fail.

2005)(First Amendment retaliation case); see also Garrett v. Board of Trustees of the University of Alabama at Birmingham, 354 F. Supp. 2d 1244, 1248 (N.D. Ala. 2005)("[T]he court cannot locate a decision that recognizes the concept of 'constructive transfer.' The lexicon of adverse employment actions does not include such an action.").

      Further, even if such a claim were cognizable, plaintiff has failed to establish "severe or pervasive" conduct sufficient to support a hostile environment claim – even considering conduct occurring before her complaint of discrimination – and, therefore, she cannot establish that she was constructively transferred. Cf. Pennsylvania State Police v. Suders, 542 U.S. 129, 133-34 (2004))("To establish hostile work environment, plaintiffs like Suders must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.' . . . Beyond that, we hold, to establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response.")(citation omitted); Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003)("A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'")(alteration in original)(citation omitted); White v. Dial Corporation, 52 F.3d 329, 1995 WL 218535 (7th Cir. 1995)(unpublished opinion)(applying constructive discharge standard, *i.e.*, whether a reasonable factfinder could conclude that plaintiff's "working conditions were so intolerable as to force a reasonable person to quit or transfer" after assuming for purposes of the issue before it that "constructive transfer" is a cognizable

17

adverse action); Manatt v. Bank of America, N.A., 339 F.3d 792, 804 (9th Cir. 2003)("'[W]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job.'")(citation omitted); Plautz v. Potter, 156 Fed. Appx. 812, 819 (6th Cir. 2005)(unpublished opinion)("We have already decided that the complained of actions do not rise to the level of creating a hostile work environment, and therefore they necessarily do not rise to the level of compelling a reasonable person to resign."). Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendants' first motion for summary judgment (Doc. # 19) is DENIED.

It is further ORDERED that defendants' second motion for summary judgment (Doc. # 20) is GRANTED as to: (1) plaintiff's Title VII retaliation claim; and (2) plaintiff's Title VII hostile environment claim. In all other respects, the motion is DENIED.

DONE, this 19th day of June, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE